**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**No. 25-13896-H**

---

**AMANDA FENNEL,**

***Appellant***

**v.**

**ELMORE COUNTY BOARD OF EDUCATION,**

***Appellee***

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION
District Court Docket No. 2:23-CV-00530-SMD**

---

# BRIEF OF APPELLEE

---

**Dana Bolden Hill, Esq.
Hill, Hill, Carter, Franco, Cole
& Black, P.C.
31 Inverness Center Pkwy., Suite 120
Birmingham, AL 35242
Telephone: (205) 271-1780
Facsimile: (205) 271-1799
dhill@hillhillcarter.com
Counsel for Appellee
Elmore County Board of Education**

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

A. Pursuant to *Federal Rule of Appellate Procedure 26.1* and the Eleventh Circuit *Rules 26.1-1, 26.1-2, and 26.1-3*, Appellees Elmore County Board of Education, submits the following list of persons or entities which, upon information and belief of the undersigned attorney for the Board, have or may have an interest in the outcome of this case:

Dennis, Laura Dennis, former Defendant, teacher employed by the Board

Dennis, Richard, former Defendant, Superintendent of the Board

Doyle, Honorable Stephen M., Chief Magistrate Judge, Middle District of Alabama

Fennel, Amanda, Plaintiff/Appellant

Goldfarb, Jon Craig, Counsel for Plaintiff/Appellant Amanda Fennel

Hill, Dana B., Counsel for Defendant/Appellee Elmore County Board of Education

Huffaker, Jr., Honorable Austin R., District Court Judge, Middle District of Alabama

Ingram, Allison Alford, Counsel for former Defendants

Malmat, Christina Maxine, Counsel for Plaintiff/Appellant Amanda Fennel

Marsh, John W., Counsel for former Defendants

Slater, Dr. Robbie, former Defendant, principal retired from the Board

Smith, L. William, Counsel for Plaintiff/Appellant Amanda Fennel

B. Appellee Elmore County Board of Education is a governmental entity of the State of Alabama. It has no parent companies or subsidiaries to report. Appellant Amanda Fennel is an individual.

Respectfully submitted,

*/s/ Dana Bolden Hill*
Dana Bolden Hill

**OF COUNSEL:**
Dana B. Hill, Esq.
**Counsel for Appellee**
**Elmore County Board of Education**
Hill, Hill, Carter, Franco, Cole & Black, P.C.
31 Inverness Center Pkwy., Suite 120
Birmingham, Alabama 35242
Telephone: (205) 271-1780
Facsimile: (205) 271-1799
dhill@hillhillcarter.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Elmore County Board of Education does not request oral argument. This appeal involves issues of federal statutory law under Title VII that are well-settled. Because the facts and issues are not novel or complex, oral argument will not significantly aid this Court's decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... 2

STATEMENT REGARDING ORAL ARGUMENT .......... 4

TABLE OF CONTENTS .......... 5

STATEMENT OF THE ISSUES .......... 9

STATEMENT OF THE CASE .......... 9

A. COURSE OF PROCEEDINGS AND DISPOSITION BELOW .......... 9

B. STATEMENT OF RELEVANT FACTS. .......... 11

1. Background .......... 11

2. Fennel and Bell's Relationship .......... 12

3. September 2021 Incident .......... 12

4. March 8, 2022 Incident .......... 12

a. District's Investigation .......... 15

b. Slater's Memo .......... 17

c. Fennel's "Comparators" .......... 18

5. Termination of Fennel and Bell .......... 19

SUMMARY OF THE ARGUMENT ....................................................................21

ARGUMENT ...........................................................................................................24

I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF SEX DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER GENDER WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND NO EVIDENCE ANY SIMILARLY SITUATED MALE EMPLOYEE WAS TREATED MORE FAVORABLY. ...............................................................................................24

II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF ASSOCIATIONAL RACE DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER ASSOCIATION WITH BELL WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND WHEN BOTH SHE AND BELL WERE TERMINATED FOLLOWING THE MARCH 8TH INCIDENT. .........................................................................37

III. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S TITLE VII CLAIMS BECAUSE LEGITIMATE, NONDISCRIMINATORY REASONS EXISTED FOR RECOMMENDING AND APPROVING TERMINATION OF HER PROBATIONARY EMPLOYMENT. ......................................................40

CONCLUSION .......................................................................................................43

CERTIFICATE OF COMPLIANCE ........................................................................45

CERTIFICATE OF SERVICE..................................................................................46

## TABLE OF CITATIONS

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)........................................26

*Baldwin v. Hyundai Motor Mfg. Ala., LLC*, No. 2:08-cv-13-MEF (WO), 2009 U.S. Dist. LEXIS 30921, at *31 (M.D. Ala. Apr. 10, 2009) .........................................................27

*Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018).................23

*Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) ........33

*Burke-Fowler v. Orange County*, Fla, 447 F.3d 1319, 1323 (11th Cir. 2006) ..................27

*Damon v. Fleming Supermarkets*, 196 F. 3d 1354, 1361 (11th Cir. 1999) .......................30

*Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) ..................38

*Earley v. Champion Int'l*, 907 F.2d 1077, 1080 (11th Cir. 1990) ....................................26

*Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015)................35

*Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 838 (11th Cir. 2015)..34

*Jenkins v. Nell*, 26 F.4th 1243, 1249–51 (11th Cir. 2022.)...............................................33

*Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318 (11th Cir. 2003)..........31, 32

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019.) .............27, 33

*McCreight v. Auburn Bank*, 117 F.4th 1322, 1333 (11th Cir. 2024).....................23, 29, 32

*Miles v. M.N.C. Corp.*, 750 F.2d 867, 869 (11th Cir. 1985).............................................40

*Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)................25

*Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986)...........39

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989; Doc. 59, pp. 11-12)..................25

*Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1232–39 (11th Cir. 2016)............23, 40

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).......................35

*Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988)...................................................39

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ..............................................34

*Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 808–09 (11th Cir. 2006).........39

*Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1343 (11th Cir. 2023).................32, 40

*Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988.) ...................................26

**Statutes**

42 U.S.C. § 2000e-2(m) .............................................................................................8, 23

Ala. Code §§16-8-23; 16-24C-5; 16-24C-6 (2024) ...................................................35, 37

## STATEMENT OF THE ISSUES

I. **WHETHER THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF GENDER DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER GENDER WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND FAILED TO SHOW ANY SIMILARLY SITUATED MALE EMPLOYEE WAS TREATED MORE FAVORABLY?**

II. **WHETHER THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF ASSOCIATIONAL RACE DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER ASSOCIATION WITH BELL WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND WHEN BOTH SHE AND BELL WERE TERMINATED FOLLOWING THE MARCH 8TH INCIDENT?**

III. **WHETHER THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S TITLE VII CLAIMS OF SEX AND RACE DISCRIMINATION WHEN LEGITIMATE, NONDISCRIMINATORY REASONS EXISTED FOR RECOMMENDING AND APPROVING TERMINATION OF FENNEL'S PROBATIONARY EMPLOYMENT?**

## STATEMENT OF THE CASE

### A. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

On September 8, 2023, Amanda Fennel filed her Complaint against the Elmore County Board of Education ("Board"), Superintendent Richard Dennis, teacher Laura Grace Dennis, and former principal Dr. Robert Slater. (Doc. 1). In her Complaint, Fennel brought claims against the Board pursuant to Title VII of the Civil Rights Act of 1964, alleging gender discrimination and associational race

discrimination by the Board based on termination of her probationary employment as an Assistant Principal at Wetumpka High School. (Doc. 1).

On April 18, 2025, the Board moved the District Court for a protective order prohibiting the discovery and/or production of requested internal investigative files of thirteen non-parties employed or formerly employed by the Board. (Doc. 33). On May 2, 2025, the Board filed its Reply in support of this motion. On July 11, 2025, the District Court entered an order, granting in part and denying in part the Board's motion, noting only four investigative files of K.B., T.P., R.Z, and F.H. are relevant to Fennel's claims, although those employees were not "strict comparators." (Doc. 46).

Following discovery, on May 9, 2025, Fennel filed a *pro tanto* stipulation of dismissal with prejudice regarding her claims against Superintendent Dennis, Laura Dennis and Dr. Slater. (Doc. 37). On May 12, 2025, the District Court entered an order dismissing with prejudice Fennel's claims against the individual defendants. (Doc. 38).

On July 23, 2025, the Board filed its *Motion for Summary Judgment*, *Evidentiary Submission* and supporting *Brief*. (Docs. 47, 48, 49, 50). On August 13, 2025, Fennel filed her *Response in Opposition* to the Board's *Motion for Summary Judgment*. (See Doc. 55). On August 27, 2025, the Board filed its *Reply Brief in Support of Motion for Summary Judgment*. (Doc. 58).

On October 6, 2025, the District Court entered a *Memorandum Opinion and Order* and *Final Judgment* granting summary judgment to the Elmore County Board of Education on all of Fennel's claims. (See Docs. 59, 60). Fennel filed a *Notice of Appeal* on November 4, 2025. (Doc. 61).

## B. STATEMENT OF RELEVANT FACTS.

### 1. Background

On July 18, 2021, Fennel began working for the Elmore County Board of Education. (See Doc. 49-1, p. 15:9-11). She was assigned as an assistant principal at Wetumpka High School and had not worked for the Elmore County School Board of Education in any capacity prior to this position. *Id*. at 15:13-19. Fennel was one of three assistant principals, which included Rahman Bell, a Black male, and Benetta Eutsey, a Black female. *Id* at 30:23-31:7. Before his termination in 2022, Bell had been employed with the Board for seven years, six of which were spent as the assistant principal. (See Doc. 49-11, p.p. 239:19-23; Doc. 49-1, p.p. 30: 21-23; 31: 1-4; 102 1-6.)

Fennel worked at Wetumpka High School for only one school year, 2021-2022. During this time, she was a probationary employee. Fennel understood that, as a probationary employee, she was not guaranteed employment for the following school year. (See Doc. 49-1, p.p. 99:10-100:14; Doc. 49-3, p.p. 206:25-207:17.)

### 2. Fennel and Bell's Relationship

Fennel characterized her relationship with Bell as nothing more than co-workers who were completely professional. *Id*. 48:5-11. Bell claims he never had a nonprofessional relationship with Fennel and described the relationship between the two of them as professional. (See Doc. 49-11, p.p. 234:9- 11, 234:20-21, 234:23).

### 3. September 2021 Incident

In the fall of 2021, Human Resources (HR) Director Susanne Goodin received a report from Dr. Robbie Slater, principal of Wetumpka High School (WHS), indicating teacher Kaitlyn Shumate had observed Fennel and Bell in the teacher's lounge together when she walked in to get ice for the dance team. When Shumate walked into the lounge, Fennel and Bell seemed startled and they jumped apart from one another, making Shumate uncomfortable. (See Doc. 49-5, p.p. 88:10-11, 88:17, 89:17- 90:4; Doc. 49-13). In her statement, Shumate claims she saw Bell and Fennel together in the teacher's lounge in August 2021 near the ice machine. When Shumate turned the corner, Fennel and Bell quickly went from being close together to jumping away from each other and straightening their clothes. Nothing was said, but Fennel looked embarrassed, and Shumate was extremely uncomfortable. (See Doc. 49-5, p.p. 202:11-14, 202:20-203:4; Doc. 49-13).

### 4. March 8, 2022 Incident

On March 8, 2022, Fennel recalled that while talking with Bell in his office,

Bell stood up to get a drink from his lunchbox. While moving towards his lunchbox, Fennel noticed that Bell's zipper was down and made a comment about it. Doc. 49-1, pp. 66:4-13, 69:9-11. Fennel stated that she told Bell that his zipper was down, and he informed her that it was broken. She offered some safety pins that she had in her own office, but he mentioned that he had a sewing kit, which Fennel thought was ridiculous. *Id.* 70:4-22, 71:3-5.

When Goodin met with Bell during her investigation of the March 2022 incident, Bell admitted that he and Fennel were in his office discussing his broken zipper and Fennel was pointing out where he should pin it. (See Doc. 49-11, p. 138:3-10.) Fennel confirmed that neither she nor Bell had any safety pins on their person during this conversation about where Bell could hypothetically place the pins on his zipper. (See Doc. 49-1, pp. 74:21-75:7)**.**

Laura Dennis started her job at Wetumpka High School as a long-term substitute in January of 2022. *Id*. 9:16-22. Laura's father is Superintendent Richard Dennis. (See Doc. 49-7, p. 8:16-17. Laura Dennis reported to Principal Slater what she witnessed when she went into Rahman Bell's office on March 8, 2022. She told Dr. Slater that she had run to Bell's office because there weren't any assistant principals that could be reached by phone when a student fight broke out in a teacher's classroom. Miss Dennis ran to Bell's office, opened the door, peeked her head inside Bell's office, and saw Fennel and Bell up against

each other, leaning against a credenza or desk. (See Doc. 49-7, pp. 31:7-16; 81:2-6; Doc. 49-8; Doc. 49-12). Miss Dennis recalled there was little space between Bell and Fennel. (See Doc. 49-7, pp. 32:23-33:2; 81:12-14, 81:17). According to Laura Dennis, when she opened the door, Bell yelled, "Oh, shit!" Then, Miss Dennis said, "There is a fight, we need help!". (See Doc. 49-7, p. 38:11-21).

Bell exited his office while zipping up his pants as he ran out of the office. (See Doc. 49-2; Doc. 50-1). Laura Dennis remembered hearing Bell's zipper as they ran down the hallway. (See Doc. 49-7, p.p. 40:7-9, 40:23, 41:16-17; 41:23-42:2). Fennel did not immediately exit Bell's office but came out a few minutes later. (See Doc. 49-7, p.p. 38:11-21; 74:2-8.;76:11-22, 77:2-9, 77:13-19, 78:3-7; see Doc. 50-1).

Laura Dennis realized she had been shaking when she got back to her classroom after observing Fennel and Bell in Bell's office. (See Doc. 49-7, p.p. 81:18-82:1, 82:4-7, 82:10). When Dr. Slater met with Laura later that day to discuss the incident, Slater recalled that she was extremely upset and crying. (See Doc. 49-3, p. 201:11-16).

Dr. Slater had not been on campus at the time of the incident between Bell and Fennel. (See Doc. 49-3, p. 119:7-8, 119:11-19). Bell was the first one to report the incident to Dr. Slater, stating that he and Fennel were in his office together talking about his broken zipper when Laura Dennis walked in. (See Doc. 49-11, p. 54:5-12). Slater asked Bell why he would make the decision to be behind closed doors with Fennel given their

past questionable interactions, to which Bell admitted having done so probably wasn't a good decision. *Id.* 54:18-22, 55:1-2.

In Slater's experience, when a student fight is reported, the employee reporting it does not identify the grade level of the students involved when asking for assistance from administration – they simply say there's a fight going on. (See Doc. 49-3, p. 204:12-19). Dr. Slater knows of no reason to explain why Fennel did not immediately go to where a fight was when a teacher reported that it was going on. *Id*. at 204:21-25. According to Dr. Slater, because there was a mix of grade levels (9th, 10th, and 11th) in the hallway where Miss Dennis was working, all three assistant principals would have supervised that area where the fight occurred. (See Doc. 49-3, p. 128:9-13). Slater also stated that he did not think a discussion between administrators about a broken zipper could be considered handling school business. *Id*. at 205:1-5.

### a. District's Investigation

Following the March 8th incident, the Board placed Fennel and Bell on paid administrative leave on March 9, 2022, and they were given the opportunity to provide their own written statements to Principal Slater. (See Doc. 49-1, p. 94: 1-3; Doc. 49-9; Doc. 49-10; Doc. 49-18). On March 30, 2022, Fennel was given the opportunity to explain verbally what had occurred on March 8, 2022, to Human Resources Director Goodin and Dr. Slater. (See Doc. 49-1, p. 86:13-16; Doc. 49-15). During their meeting,

Fennel read aloud the same written statement that she had prepared on March 9, 2022. (Doc. 49-1, p. 205:15-205:22; Doc. 49-5, pp.128:23-129:2; 198:11-199:3; Doc. 49-9).

During their meeting, Goodin asked Fennel why she stayed back in Bell's office for over a minute when Fennel knew there was a student fight going on; but Fennel sat in silence and simply did not respond to Goodin's question. (See Doc. 49-5, p.p. 82:22-83:1, 83:8-9). At the time of her meeting with Goodin, Fennel testified she did not remember what she did after Mr. Bell and Miss Dennis ran to the fight. (See Doc. 49-1, p. 87:8-14). Fennel never denied not knowing that there was a student fight that had been announced by Ms. Dennis. (See Doc. 49-5, p. 201:5-9, 201:12). During her deposition, Fennel later recalled that she did not immediately exit Bell's office on March 8 because she needed to retrieve her coffee cup, a sticky note, and walkie-talkie from Bell's desk and because she was still monitoring the reboot of Bell's desk phone. (Doc. 49-1, p. 78:11- 20).

Fennel admits she read aloud her prepared statement to Dr. Slater and Ms. Goodin on March 30th. (See Doc. 49-1, p. 205:15, 205:22-205:2; see Doc. 49-9). Fennel cannot explain why her written statement did not include the following facts: Bell having yelled "oh, shit!" when Miss Dennis came into the office; that Fennel was startled when Miss Dennis opened the door; or that the fact that Fennel did not immediately go with Bell and Miss Dennis to the fight because she wanted to stay to review her sticky note, pick up her coffee cup and walkie talkie, and make sure Bell's

phone was rebooted. *Id*. 206:19-23, 207:3-15; Doc. 49-9).

Fennel admitted that she didn't respond immediately to the fight. (See Doc. 49-1, p.p. 258:7-13; 259:2-5). Fennel remained in Bell's office for approximately a minute and twenty-seven seconds before she walked to the hallway where the fight was taking place. (See Doc. 49-1, p. 259:11-18; see Doc. 50-1). Fennel exited Bell's office and took a left towards Hall C to investigate the fight. She met the other assistant principal, Ms. Eutsey, on the way. Both assistant principals were headed towards the fight at the same time. (See Doc. 49-1, p. 85:19-86:1; Doc. 50-1).

Fennel confirmed that she had seen the footage of Bell running out of his office on March 8th, 2022, and it did appear to Fennel that Bell was attempting to zip up his pants as he ran out of the office. (See Doc. 49-1, p. 186:1-13; Doc. 50-1). Fennel admitted that she did not run but casually walked towards the fight after she eventually left Mr. Bell's office. Id 187:16-21; (see Doc. 50-1). Fennel confirmed that the fight reported by Laura Dennis involved two students and that making sure the safety of the students was a priority of her job as an assistant principal. (See Doc. 49-1, p. 196:12-16; see Doc. 49-20).

**b. Slater's Memo**

Following the incident on March 8, 2022, Principal Slater prepared a memorandum summarizing his notes from September 2021 concerning teacher Kaitlyn Shumate's report to him about walking into the teacher's lounge and other

issues relating to Bell and Fennel. (See Doc. 49-3, p.p. 62:19-23, 63:5-7; Doc. 49-14). Fennel testified that she does not recall the incident in the teacher's lounge reported by teacher Shumate. (See Doc. 49-1, p.p. 111:16-22, 112:2-4). Fennel also denied Slater ever talked to her about the lounge incident or gave any directives to her about her behavior with Bell. (See Doc. 49-1, p. 89:14-22). Slater confirmed his September 2021 memo was not a letter of reprimand and that he did not issue a copy of the memo to either Bell or Fennel. (*Id*. 198:25-199:5; Doc. 49-14). Fennel has no evidence or knowledge that Director Goodin, Superintendent Dennis, or the board members, had any knowledge of whether Dr. Slater had given any prior write-ups or verbal directives to Fennel in September of 2021. (Doc. 49-1, p. 300:1-6, 300:8).

**c. Fennel's "Comparators"**

Prior to March of 2022, Goodin had no reports of Bell sexually harassing anyone. None of the employees who had reported misconduct by Bell after the Board's investigation started in March wanted to pursue a grievance, demanding that Goodin not share their written statements and not take any formal action. (See Doc. 49-5, p.p. 37:22-38:8). Dr. Slater had a few teachers tell him that Bell had made inappropriate comments and one teacher shared her observation of a casual interaction between Bell and a female student. (See Doc. 49-11, p. 46:11-12, 46:16-17). Slater had handled these reports at the school level and in February 2020 Slater had given verbal directives to Bell about his adjusting his behavior. *Id*. 47:15-18.

Before the March 8th incident, Bell admitted that he was counseled by Slater about inappropriate, unprofessional conduct on two prior occasions: one from February 21, 2020, and another from September 1, 2021. Slater testified that he prepared handwritten notes following his conversations with Bell on both of those dates, and he provided a typed memo of those notes to Goodin in March 2022. (See Doc. 49-11, p.p. 127:21-128:2, 128:5- 9; Doc. 49-14).

Teacher Ken Burdett "swiped" his hand over a male administrator's buttocks, while asking "debit or credit?" and commenting about a "bromance." (Doc. 56-19). Burdett was suspended without pay for two days. (*Id*., p. 3). Teacher Roman Zeigler was accused of taking a photo of a female employee from behind but was not formally disciplined. (Doc. 56-20, pp. 2-3).

**5. Termination of Fennel and Bell**

On May 26, 2022, Fennel received Superintendent Dennis' notice of his intent to recommend termination. (See Doc. 49-1, p. 208:11-18; Doc. 49-16). Despite the notice indicating Fennel had the right to submit a written statement to the superintendent and the board, explaining why her employment should not be terminated, she did not submit any statement. *Id.* at 208:22-209:7. Fennel understood Superintendent Dennis had to decide as to who was telling the truth about the circumstances surrounding the March 8, 2022 incident. (See Doc. 49-1, p. 138:14-19). Mr. Dennis, as superintendent, is the only one who can make personnel recommendations to the Board. (See Doc. 49-3, p.

202:3-5). Supt. Dennis recommended the termination of Fennel's probationary employment after reading the information that was compiled during Directory Goodin's investigation. (See Doc. 49-4, p.p. 134:20-135:4). Superintendent Dennis concluded Fennel and Bell were observed in the office being in close proximity to each other, while a significant student fight was occurring in a classroom. Therefore, he determined Fennel and Bell compromised themselves as leaders, and that their leadership would no longer be effective. *Id.* at 135:7-13, 135:22-136:8; 141:3-4, 7-10.

The Alabama Code of Ethics, Standard 1 provides that employees demonstrate conduct that follows generally recognized standards of educational professionalism, including providing supervision to students. (See Doc. 49-6). Board policy also requires employees to serve as appropriate role models for students in their behavior and demeanor, to comply with the Code of Ethics, and to provide effective supervision of the students. (See Doc. 49-22). Based upon the totality of the circumstances that stemmed from Fennel and Bell "being in a compromising position," Superintendent Dennis recommended termination of Fennel's and Bell's employment to the Board. (Doc. 49-4, pp. 189:21:22, 189:23-190:4).

Fennel admitted that if two school employees are engaged in intimate conduct at work, such conduct alone would warrant termination. (See Doc. 49-1, p. 134:5-10, 134:18). Fennel also confirmed that making sure the safety of the students was

prioritized and making sure students were out of harm's way fell within her job as an assistant principal. (See Doc., 49-1, p. 196:12-16; see Doc. 49-20). Fennel has no evidence Superintendent Dennis considered her gender with respect to his recommendation to terminate her employment. (See Doc. 49-1, p.p. 139:23-140:3,140:5). Fennel has no evidence Superintendent Dennis considered her purported association with a Black coworker as the reason he made his recommendation to terminate her employment. (See Doc. 49-1, p. 140:6-11, 140:13).

On May 23, 2022, upon recommendation of the Superintendent, the Board approved the termination of Fennel's probationary employment. (See Doc. 49-17). On June 28, 2022, upon recommendation of the Superintendent, the Board unanimously voted to terminate Bell's employment as a tenured assistant principal. (See Doc. 49-11, pp. 337:11-338:5; Doc. 49-19).

## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment in favor of the Board as to Fennel's claims of gender discrimination and associational race discrimination. (Doc. 59). The evidence establishes the Board's decision to terminate Fennel's probationary employment as a first-year assistant principal was based on teacher Laura Dennis' observations and Superintendent Richard Dennis' recommendation that Fennel and fellow assistant principal Rahman Bell should be terminated for their conduct at school on March 8, 2022. On appeal, Fennel

disputes the District Court's determination she failed to offer sufficient evidence to show her gender or her purported association with Bell, who is Black/African American, was a motivating factor in the Board's decision to terminate her probationary employment as an assistant principal.

The District Court properly concluded as a matter of law Fennel did not offer circumstantial evidence to satisfy the mixed-motive standard or a "convincing mosaic" theory sufficient to trigger a reasonable inference of discrimination on any basis. None of the male employees identified by Fennel as comparators were similarly situated to Fennel in any material respect. (Doc. 59, pp. 9-10). Post-hoc sexual harassment reports by other staff members against Bell following the Board's investigation of the March 8th incident were immaterial to the decision leading to Fennel's termination. Similarly, Principal Slater's memo memorializing his notes concerning a prior staff report of Bell and Fennel's questionable conduct before the March 8th incident did not establish pretext for the Board's decision to terminate Fennel's employment. Fennel's circumstantial evidence failed to create a genuine issue of material fact as to whether the Board's decision of termination was motivated by her sex.

With respect to Fennel's claim of associational race discrimination, the District Court properly concluded, as a matter of law, Fennel did not offer evidence of a proper comparator who received more favorable treatment and who engaged in

similar conduct as Fennel with respect to the March 8th incident. Similarly, the record contains no evidence supporting a reasonable inference that Principal Slater had any incentive to terminate Fennel, concurrently with Bell, merely because Bell had previously attributed teacher complaints against him to racial bias.

The District Court correctly granted summary judgment on all claims. The undisputed record of evidence demonstrates legitimate reasons for Fennel's termination—intimate, questionable conduct during school hours and Fennel's delayed response to a student fight—supported by eyewitness testimony and video. Appellant's mixed-motive claim of sex discrimination relies upon unsubstantiated inferences, speculation, and employees involved in non-comparable incidents. The associational race claim likewise fails for lack of evidence connecting Fennel's termination to her interracial association with Bell. Ultimately, the same conduct led to the same discipline for Fennel and Bell - termination.

For the reasons presented herein, the District Court's decision granting summary judgment in the Board's favor is due to be affirmed.

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF SEX DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER GENDER WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND NO EVIDENCE ANY SIMILARLY SITUATED MALE EMPLOYEE WAS TREATED MORE FAVORABLY.

Fennel's gender discrimination claim fails as a matter of law. No reasonable jury could find Fennel's sex was remotely a motivating factor in her termination. The record shows legitimate, non-discriminatory reasons for termination of her probationary employment as a first-year assistant principal and no evidence of sex-based motive. On appeal, Fennel argues the District Court misapplied the mixed-motive standard in evaluating circumstantial evidence to infer intentional discrimination. (App. Brief, pp. 46-50.). Title VII mixed-motive claims require evidence that a protected characteristic was a motivating factor for the adverse action. See 42 U.S.C. § 2000e-2(m); *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1232–39 (11th Cir. 2016). Yet, the standard of proof is not relaxed; "bits and pieces" do not suffice. See *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018); *McCreight v. Auburn Bank*, 117 F.4th 1322, 1333 (11th Cir. 2024). Here, Superintendent Dennis recommended termination of Fennel's probationary position as assistant principal based on eyewitness testimony and

corroborating video of the March 8th incident involving Fennel and Bell, as well as Fennel's own account of pointing to Bell's open zipper when teacher Laura Dennis entered Bell's office to seek help with a student fight. (Doc. 49-1, pp. 66:4-13, 69:9-11; Doc. 49-7, pp. 31:7-16; 81:2-6; Doc. 49-8; Doc. 49-12). Miss Dennis recalled there was little space between Bell and Fennel. (See Doc. 49-7, pp. 32:23-33:2; 81:12-14, 81:17). Even taken in light most favorable to Fennel, no reasonable jury could find that meeting behind closed doors and discussing her co-worker's broken zipper was a regular part of Fennel's job as an assistant principal. Moreover, the Board's decision to terminate is bolstered by Fennel's blatant failure to exit Bell's office immediately and respond promptly to assist with the student fight after teacher Dennis alerted them of the danger. (See Doc. 49-7, p.p. 38:11-21; 74:2-8.;76:11-22, 77:2-9, 77:13-19, 78:3-7; see Doc. 50-1). Rather than promptly assisting with the student altercation, Fennel remained in Bell's office to collect personal items and monitor a phone reboot – conduct that reflected poor administrative judgment and supported the Board's reasonable decision to terminate her employment as a first-year assistant principal. (Doc. 49-1, p. 78:11-20). As noted by the District Court, the record fully supports a reasonable, common-sense inference of belief by Laura Dennis, Superintendent Dennis, or the Board that something inappropriate had occurred within Bell's office between Fennel and Bell. (Doc. 59 p. 11). This Honorable Court has determined firings

based on common-sense inferences and good-faith judgments are permissible so long as not discriminatory. See *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Fennel's next appellate argument is that one school board member's question at Bell's termination hearing regarding the appropriateness of Bell and Fennel meeting behind closed doors somehow undermined the Board's rationale for Fennel's termination. (App. Brief, pp. 48). This argument fails for several reasons. As the District Court correctly determined, a single Board member's hearing question regarding a male–female pairing behind closed doors is, at most, a stray remark unconnected to the decision-making process. See *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989; Doc. 59, pp. 11-12). Fennel and Bell were disciplined identically, subverting any inference of sex-based animus on the part of the Board. On May 23, 2022, the Board approved the termination of Fennel's *probationary* employment. (See Doc. 49-17). On June 28, 2022, the Board unanimously voted to terminate Bell's employment as a *tenured* administrator. (See Doc. 49-11, p.p. 337:11-338:5; Doc. 49-19). Notably, at the time the board member's stray remark was made during Bell's termination hearing as a tenured employee, Fennel's probationary employment had already been approved by the Board one month earlier. Thus, because the board member's comment was made one month after Fennel's termination was completed, it cannot reasonably be

attributable to the Board's decision-making process regarding Fennel's firing. The District Court reasoned the board member's remark "reflects a genuine inference based on an admitted fact – that male and female administrators were observed behind a closed door in a suggestive position." (Doc. 59, p. 12).

Although the evidence must be viewed in a light most favorable to the nonmoving party at the summary judgment stage, this Honorable Court has found "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Earley v. Champion Int'l*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). At summary judgment and on appeal, Fennel has not presented any "significantly probative" evidence on the issue of whether the Board considered her sex when deciding to discharge her from her administrative duties. See *Young v. Gen. Foods Corp*., 840 F.2d 825, 829 (11th Cir. 1988.) Fennel admitted she has no evidence Superintendent Dennis considered her gender with respect to his recommendation to the Board regarding terminating her employment. (See Doc. 49-1, p.p. 139:23- 140:3,140:5). Without no substantive evidence regarding sex discrimination, summary judgment was properly granted and due to be affirmed.

### 1. Fennel Failed to Show Any Similarly Situated Male Employee Was Treated More Favorably Than She Was Treated.

Fennel contends Bell and other male employees are appropriate comparators and were treated more favorably by the Board. (App. Brief, pp. 50-60). Specifically, Fennel argues that Dr. Slater's prior verbal counseling of Bell for unrelated reports of misconduct constitutes evidence of discrimination against Fennel. See *id*. This argument fails as a matter of law. To establish her *prima facie* case for discrimination, Fennel must show that "[s]he was treated less favorably than similarly situated employees outside of [her] protected class." *Lewis v. City of Union City, Ga*., 918 F.3d 1213, 1220-21 (11th Cir. 2019.) This Court has emphasized the "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Baldwin v. Hyundai Motor Mfg. Ala., LLC*, No. 2:08-cv-13-MEF (WO), 2009 U.S. Dist. LEXIS 30921, at *31 (M.D. Ala. Apr. 10, 2009 (quoting *Burke-Fowler v. Orange County*, Fla, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotation marks omitted).

Here, Fennel did not identify a comparator who engaged in similar conduct in either her brief on appeal or in her summary judgment response to the trial court below. (See Doc. 55; App. Brief, *passim*). First, the record shows earlier reports of

misconduct made by teachers against Bell were disclosed to Central Office *after* the District launched its investigation into the March 8th incident involving Fennel and Bell. Prior to March of 2022, Goodin had no reports of Bell harassing anyone and even after the investigation into the March 8th incident, when reports were made, none of the complaining employees wanted to pursue a grievance or want the Board to take any formal action against Bell. (See Doc. 49-5, p.p. 37:22-38:8). Two years prior to the March 8th incident, Principal Slater had a few teachers tell him that Bell had made inappropriate comments towards them and one teacher shared her observation of a casual interaction between Bell and a female student. (See Doc. 49-11, p. 46:11-12, 46:16-17). Slater had handled these reports at the school level and had given Bell verbal directives about his behavior in February 2020. *Id*. 47:15-18. Principal Slater's earlier verbal counseling of Bell regarding his conduct with teachers and students does not reasonably demonstrate that Bell was somehow treated more favorably than Fennel. In applying *Lewis*, the District Court correctly determined no reasonable jury could infer gender discrimination of Fennel based on Slater's prior verbal correction of Bell for alleged conduct clearly dissimilar to the circumstances of the March 8th incident. (Doc. 59, p.13). Employees are not similarly situated in all material respects if they "engaged in different conduct, were subject to different policies, or have different work histories." See *Lewis*, 918 F.3d. at 1228. Yet, notably, when Bell engaged in the

same conduct as Fennel – being alone in Bell's office discussing his broken zipper –he was subject to termination just as Fennel. (Doc. 59, p.13; See Doc. 49-11, pp. 337:11-338:5; Doc. 49-17; Doc. 49-19).

The lower court's memorandum opinion correctly noted that while mixed-motive analysis lowers the causation bar, it does not lessen Fennel's evidentiary burden. (Doc. 59, p. 8)(citing *McCreight*, 117 F.4th at 1333). The lower court emphasized that "bits and pieces" of circumstantial evidence—such as a stray remark and speculation—are insufficient to indicate some discriminatory animus. *Id*. The termination of both Fennel and Bell for the same incident negates any inference of sex-based bias in the employment action taken against Fennel. In the context of the circumstances in the case at bar, prior allegations against Bell, which were not previously reported by Principal Slater to the Superintendent or the Board, were not sufficiently similar to Fennel's conduct of March 8th incident. The District Court correctly noted that none of the prior complaints about Bell involved him being discovered behind closed doors with a colleague, adjusting his clothing, during an ongoing student emergency such as a fight. (Doc. 59, p. 13). Taken in light most favorable to the Appellant, Fennel and Bell were discussing his broken zipper when Laura Dennis entered Bell's office to seek help with a student fight. (Doc. 49-1, pp. 66:4-13, 69:9-11, 70:4-22, 71:3-5; 74:21-75:7; 138:3-10). On March 30, 2022, Fennel was given the opportunity to explain what had occurred on

March 8, 2022 to Director Goodin and Dr. Slater. (See Doc. 49-1, p. 86:13-16; Doc. 49-15). Director Goodin asked Fennel why she stayed back in Bell's office for over a minute when Fennel knew there was a student fight going on; yet Fennel sat in silence and simply did not respond to Goodin's question. (See Doc. 49-5, p.p. 82:22-83:1, 83:8-9). Fennel testified that she told Goodin that she did not remember what she did after Mr. Bell and Miss Dennis ran to the fight. (See Doc. 49-1, p. 87:8-14). But tellingly, Fennel never denied that, at the time, she knew a student fight had been reported by Miss Dennis. (See Doc. 49-5, p. 201:5-9, 201:12). During her deposition, Fennel recalled that she did not immediately exit Bell's office on March 8 because she wanted to retrieve her coffee cup, a sticky note, and walkie-talkie from Bell's desk and because she was still monitoring the reboot of Bell's desk phone. (Doc. 49-1, p. 78:11- 20). No unlawful motive drove the decision to terminate Fennel; her poor judgment and unprofessional conduct did. *Damon v. Fleming Supermarkets*, 196 F. 3d 1354, 1361 (11th Cir. 1999).

Similarly, Fennel's contention employees Ken Burdett and Roman Zeigler are proper comparators is likewise legally insufficient. (App. Brief, pp. 59-60). Fennel is not "similarly situated in all material respects" with these two employees because they did not engage in the same basic conduct or misconduct. See *Lewis*, 918 F.3d at 1227-28. Burdett supposedly "swiped" his hand over a male administrator's buttocks, while asking "debit or credit?" and commenting about a

"bromance." (Doc. 56-19). Burdett was suspended without pay for two days. (*Id*., p. 3). Zeigler was accused of taking a photo of a female employee from behind but was not formally disciplined. (Doc. 56-20, pp. 2-3). The District Court correctly determined Zeigler and Burdett are not sufficient comparators because they clearly engaged in misconduct different from Fennel. (Doc. 59, pp. 13-14). Burdett's and Zeigler's conduct bears no meaningful resemblance to the March 8 circumstances involving Fennel and Bell, and no reasonable jury could conclude otherwise.

In reaching its judgment, the District Court underscored a principle this Court has long recognized: comparator analysis requires due consideration of both the number and nature of the acts of misconduct. (See Doc. 59, p. 14)(citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318 (11th Cir. 2003). In the fall of 2021, Director Susanne Goodin received a call from Dr. Slater, indicating teacher Kaitlyn Shumate had seen Fennel and Bell in the teacher's lounge together when Shumate walked in to get ice for the dance team. When Shumate walked into the lounge, Fennel and Bell seemed startled and they jumped apart from one another, making Shumate uncomfortable. (See Doc. 49-5, p.p. 88:10-11, 88:17, 89:17- 90:4; Doc. 49-13). In this case, even before the March 8th incident, Fennel and Bell had been observed alone in close proximity of each other and under suspicious circumstances, further distinguishing their conduct from that of any proposed comparator. (See Doc. 59, p. 14)(citing *Knight*, 330 F.3d at 1318).

Fennel asserts Principal Slater's prior awareness of unreported, staff concerns regarding Bell's conduct somehow evidences the Board's tolerance of sexual harassment and supports an inference of sex discrimination against a female administrator (Fennel) who was terminated for failing to appropriately respond to a student altercation—while admittedly engaged in a conversation with Bell about his broken zipper at the time. (App. Brief, pp. 60-62). This argument is speculative and does not establish Fennel's sex as a motivating factor in the Board's decision to terminate her employment. *McCreight*, 117 F4th. 1333. The record shows HR and the Board were unaware of prior allegations against Bell until after the March 8 investigation commenced. (Doc. 49-5, pp. 37:22-38:8). Even if the earlier reports against Bell had been known by the Central Office, the uncontroverted evidence shows those involved declined formal action, limiting the Board's ability to discipline Bell based on those grounds. See *id*. Fennel's assertion that the Board "tolerated" Bell's prior misconduct fails to tie matters to any possible discriminatory motive relating to Fennel's termination, as required by Title VII. See *Yelling v. St. Vincent's Health Sys*., 82 F.4th 1329, 1343 (11th Cir. 2023).

The Appellant's proffered comparators (including Burdett and Zeigler) did not engage in the same basic conduct—being discovered in an apparently intimate posture behind closed doors during school hours during a student emergency, with video corroboration. See *Jenkins v. Nell*, 26 F.4th 1243, 1249–51 (11th Cir. 2022.)

They are not valid comparators for purposes of Fennel's sex discrimination claim. Moreover, Fennel and Bell were treated the same (fired) for the March 8th incident, defeating any reasonable inference Fennel's termination was the product of any unlawful motive. Fennel has not presented evidence creating a genuine dispute about whether she and other male employees are "sufficiently similar, in an objective sense, that cannot be reasonably distinguished." *Lewis*, 918 F.3d at 1228 (other quotations omitted). This Court should affirm the District Court's ruling in the Board's favor.

**2. Principal Slater's Retrospective Memo about Fennel's Prior Interactions with Assistant Principal Bell was Immaterial to Fennel's Termination, Which Was Based on the March 8th Incident.**

The District Court properly concluded Dr. Slater's memorandum summarizing his September 2021 discussions with Bell and Fennel about their workplace interactions does not constitute probative evidence of pretext with respect to the proffered reason for Fennel's termination. (Doc. 59, pp. 14-15). "To avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (cleaned up). "A reason is **not** pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Id*. (emphasis added) (quoting *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). The employee "must address the employer's proffered legitimate reason[s] head on and rebut [them]." *Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 838 (11th Cir. 2015). Here, Fennel failed to produce sufficient evidence to confront and refute the Board's articulated, nondiscriminatory reasons for her termination.

On appeal, Fennel claims Slater fabricated the memo to show he had given prior warnings to her and Bell about their workplace interactions and that Slater had never met with her in September 2021 concerning the teacher lounge incident. (App. Brief, pp. 64-65). Fennel never denied the incident occurred but testified that she did not recall the incident in the teacher's lounge which was observed by teacher Shumate. (See Doc. 49-1, pp. 111:16-22, 112:2-4). Fennel denied Slater ever talked to her about the lounge incident or gave any directives to her about her behavior with Bell. (See Doc. 49-1, p. 89:14-22). The lower court acknowledged possible inaccuracies in Slater's memo but deemed them immaterial because Fennel's termination rested on corroborated evidence of Fennel's and Bell's conduct of March 8, 2022: eyewitness testimony, video footage, and Fennel's delayed response to the site of the student fight. (Doc. 59, p. 15).

As an aside, as principal, Dr. Slater had no authority to make hiring and firing decisions. Only the Superintendent is authorized to make personnel recommendations

to the board, and such recommendations are only approved by majority vote of the Board. See Ala. Code §§16-8-23; 16-24C-5; 16-24C-6 (2024). Fennel offers no evidence suggesting Slater was involved in the recommendation process leading to termination of her probationary employment. Fennel admitted she had no evidence or knowledge that Human Resources Director Goodin, Superintendent Dennis, or the board members knew anything about Dr. Slater's written or verbal directives from September 2021. (See Doc. 49-1, p. 300:1-6, 300:8). Thus, there can be no reasonably inference of discrimination as to Fennel's termination arising from Slater's purported falsification of a memorandum concerning any early directives from September 2021.

Indeed, disputes over documentation do not negate legitimate business reasons for personnel changes. See *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (noting "Title VII does not allow federal courts to second-guess nondiscriminatory business judgments."). Even assuming inaccuracies in Slater's memorandum, *Reeves* establishes that disagreement with the employer's documentation does not, without more, prove discriminatory intent. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). Superintendent Dennis recommended the termination of Fennel's probationary employment after reading the witness statements and reviewing the video footage that was compiled during Director Goodin's investigation. (See Doc. 49-4, p.p. 134:20-135:4). Superintendent Dennis concluded Fennel and Bell were observed in the office, being

in close proximity to each other, while a significant student fight was occurring in a classroom; therefore, Fennel and Bell compromised themselves as leaders, and that their leadership would no longer be effective. Id. 135:7-13, 135:22-136:8; 141:3-4, 141:7-10. Fennel cannot and does not dispute the video evidence of Bell adjusting his zipper or her delayed response in exiting his office to attend to the student fight; therefore, she has not established a *prima facie* case of sex discrimination.

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S CLAIM OF ASSOCIATIONAL RACE DISCRIMINATION WHEN FENNEL PRESENTED NO EVIDENCE HER ASSOCIATION WITH BELL WAS A MOTIVATING FACTOR FOR TERMINATION OF HER PROBATIONARY EMPLOYMENT AND WHEN BOTH SHE AND BELL WERE TERMINATED FOLLOWING THE MARCH 8TH INCIDENT.

The District Court properly granted summary judgment as to Fennel's associational race discrimination claim because there is no evidence Fennel's race (Caucasian) or her association with an African American co-worker (Bell) played in role in the Board's decision to terminate Fennel's employment. (Doc. 59, pp 17-18). Citing *Parr* and *Whitney*, Fennel asserts her termination was due to her race in the context of her close working relationship with Bell. (App. Brief, pp. 66-70). The trial court correctly rejected Fennel's theory because the record contains no evidence—circumstantial or otherwise—supporting an inference of race discrimination in the Board's decision to fire Fennel. (Doc. 59, pp. 17-18). Fennel cites to two categories of

circumstantial evidence in support of her associational race discrimination claim: 1. Dr. Slater's purported "incentive" to fire a white employee simultaneously with Bell's termination; and 2. Dr. Slater's more favorable treatment of the other assistant principal, Benetta Eutsey (who is African American). Fennel's argument falls short. First, the claim that Slater had an 'incentive' to terminate a white employee alongside Bell is unsupported by the record and therefore purely speculative. Second, as previously noted, Dr. Slater, as principal, had no authority to fire any employee. Such authority rests upon the Superintendent's recommendation and the Board's vote on the personnel recommendation. See Ala. Code §§16-8-23; 16-24C-5; 16-24C-6 (2024)(noting the superintendent makes recommendations to the Board for terminating employees). Fennel offers no evidence suggesting Slater was involved in the recommendation process leading to termination of her probationary employment. (See Docs. 55, 56, *passim*).

Second, Fennel's assertion of Dr. Slater's "more favorable" treatment of Assistant Principal Eutsey lacks evidentiary support and relevance to the issue before this Honorable Court – whether Fennel's race and her working relationship with Bell served as the Board's reason to terminate her employment. It did not. Slater's decision not to discipline Ms. Eutsey does not constitute more favorable treatment because the circumstances are materially different to the circumstances which gave rise to Fennel's termination. Bell's 2021 comment to Dr. Slater about Eutsey rubbing his

back and holding his hand clearly involved some isolated interaction unrelated to any urgent circumstance, and neither Bell nor any staff member complained or reported that it was inappropriate. (See Doc. 56-4, p. 31; Doc. 59, p. 17). In contrast, Fennel was terminated for failing to respond appropriately to a student fight – after having engaged in conduct unrelated to role as an administrator- whether questionable interaction with Bell in his office or discussion of Bell's broken zipper. These situations are not comparable, and differential treatment in dissimilar circumstances cannot support an inference of discrimination.

At summary judgment, the District Court properly reviewed all evidence and drew reasonable inferences in Fennel's favor—yet her claims failed. (Doc. 59). On appeal, Fennel now asks this Honorable Court to disregard reason and adopt inferences that stretch beyond the bounds of plausibility. This Court should decline to do so. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." See *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Overall, the District Court rightly concluded that legitimate, non-discriminatory reasons—intimate, inappropriate conduct during school hours and delayed response to a student fight—supported Fennel's termination. (Doc. 59). Fennel's appellate arguments in support of interracial association bias rely on conjecture and one dissimilar comparator and do not create a genuine issue of material fact. Associational claims

require evidence that the adverse action was taken because of interracial association. See *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986); *Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 808–09 (11th Cir. 2006). Fennel fails to present sufficient evidence that would allow a jury to infer intentional discrimination based on her race and her association with Bell. The simultaneous termination of both participants for the same conduct defeats any inference that Fennel was targeted because of interracial association. For the reasons above, the District Court's ruling of summary judgment as to Fennel's associational race discrimination claim is due to be affirmed.

## III. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON FENNEL'S TITLE VII CLAIMS BECAUSE LEGITIMATE, NONDISCRIMINATORY REASONS EXISTED FOR RECOMMENDING AND APPROVING TERMINATION OF HER PROBATIONARY EMPLOYMENT.

The Board's burden of producing a legitimate, non-discriminatory reason, at this juncture of the analysis is "exceedingly light." *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988). The parties agree that Fennel's evidence is solely circumstantial. Mixed-motive claims, based on circumstantial evidence, require the Court to determine whether a plaintiff has "offered 'evidence sufficient to convince a jury that [gender or interracial association] was a motivating factor for defendant's adverse employment action.'" *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016). The Board does "not have to persuade the court

that it was actually motivated by the proffered reasons." See *Miles v. M.N.C. Corp.*, 750 F.2d 867, 869 (11th Cir. 1985). In her arguments on appeal, Fennel makes numerous references to the mixed-motive theory of causation and pretext but fails to offer sufficient evidence that casts any doubt on the Board's reasons for terminating her employment as a probationary assistant principal. (App. Brief, *passim*). The circumstantial evidence identified by Fennel, taken separately or collectively, fails to create a genuine issue of material fact as whether her termination was motivated by her sex or association with Bell. See *Yelling*, 82 F.4th at 1343. The Board had legitimate, non-discriminatory reasons for recommending and approving termination of Fennel's probationary employment.

As demonstrated in the Board's *Motion for Summary Judgment*, Fennel's claims fail as a matter of law under the *McDonnell-Douglas* pretext analysis, mixed motive theory and convincing mosaic of circumstantial evidence standard. (See Docs. 47, 48, 49, 50). Under any evidentiary framework, Fennel's gender-discrimination and associational-race-discrimination claims cannot withstand summary judgment or appellate review. The Board's motion for summary judgment submissions and evidence detail the March 8 eyewitness account, video stills and footage showing Bell zipping his pants while running into the hallway, Fennel remaining approximately ninety seconds in Bell's office before responding to the student fight, the prior lounge incident involving Fennel and Bell

as reported by teacher Shumate, and Superintendent Dennis's recommendation to the Board based on leadership concerns and student safety arising from the March 8th events. (Docs. Doc. 47, 48, 49, 50; 59). Fennel admitted she did not immediately respond to the fight and offered no evidence that the Superintendent or Board considered her sex, race, or association with Bell in making the decision to terminate her employment as a first-year assistant principal. (Doc. 49-1, pp. 78:11- 20; 258:7-13; 259:2-5; Doc. 49-1, pp. 139:23-140:3 -13). For these reasons, the District Court's judgment is due to be affirmed in favor of the Elmore County Board of Education.

# CONCLUSION

The District Court properly granted summary judgment in favor of the Elmore County Board of Education. Upon viewing the facts of this case in a light most favorable to Fennel, the District Court properly concluded that there was no genuine issue of material fact related to Fennel's claims of gender discrimination and associational racial discrimination. On appeal, Fennel fails to point to any significantly probative evidence in the record to create a dispute regarding the legitimate, non-discriminatory reasons, giving rise to termination of her employment as a first-year assistant principal. The undisputed record demonstrates legitimate, non-discriminatory reasons for termination, specifically her unprofessional conduct of March 8, 2022 and Appellant failed to present evidence that sex or interracial association was a motivating factor for ending her probationary employment. The Elmore County Board of Education respectfully requests that this Honorable Court affirm the decision of the District Court.

Respectfully submitted,

*s/ Dana Bolden Hill*
Dana Bolden Hill

OF COUNSEL:
Dana B. Hill, Esq.
Counsel for Appellee
ELMORE COUNTY BOARD OF EDUCATION
Hill, Hill, Carter, Franco, Cole & Black, P.C.
31 Inverness Center Pkwy., Suite 120
Birmingham, Alabama 35242
Telephone: (205) 271-1780
Facsimile: (205) 271-1799
dhill@hillhillcarter.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of *Fed.R.App.P. 32(a)(7)(B)* because it contains 7,938 words, excluding the parts of the brief exempted by *Fed.R.App.P. 32(a)(7)(B)(iii)*. This brief complies with the typeface requirements of *Fed.R.App.P. 32(a)(5)* and the type-style requirements of *Fed.R.App.P. 32(a)(6)* because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-pt Times New Roman font.

*s/ Dana Bolden Hill*
Dana Bolden Hill

## CERTIFICATE OF SERVICE

I hereby certify that on this the **14th** day of **January**, **2026**, I electronically filed the Brief of Appellee with the Clerk of Court. In addition, four copies of the foregoing were filed with the Clerk of Court via U.S. First Class mail. I also hereby certify that a copy of the foregoing has been served upon the following counsel of record via the Court's Electronic Case Files system (ECF) on the **14th** day of **January, 2026.**

Jon C. Goldfarb
L. William Smith
WIGGINS, CHILDS, PANTAZIS,
FISHER, & GOLDFARB, LLC
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

*s/ Dana Bolden Hill*
Dana Bolden Hill