**APPEAL NUMBER: 25-13896**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**AMANDA FENNEL,**

**Plaintiff-Appellant,**

**v.**

**ELMORE COUNTY BOARD OF EDUCATION,**

**Defendant-Appellee.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA**

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

**Jon C. Goldfarb**
**L. William Smith**
Wiggins, Childs, Pantazis, Fisher, & Goldfarb, LLC
The Kress Building
301 North 19th Street
Birmingham, Alabama 35203
(205) 314-0500
**Attorneys for Plaintiff-Appellant**

# Table of Contents


Table of Contents……………………………………………………………...2

Table of Authorities…………………………………………………………...3

I. Introduction………………………………………………………………5

II. A Reasonable Jury Could Find that Slater's Biased Actions Caused Plaintiff's Termination……………………………………………………7

III. Defendant Seeks to Minimize Evidence of Slater's More Favorable Treatment of Bell's Comparable Misconduct………………………………10

IV. The Termination of "Both Participants" Is Consistent With and Supports Plaintiff's Theories of Associational Race and Gender Discrimination……14

V. Defendant Advances No Non-Discriminatory Explanation for Why Slater Would Fabricate A Memo to Make Plaintiff Appear More Culpable Than She Was……………………………………………………………………17

VI. Conclusion………………………………………………………………20

Certificate of Compliance………………………………………………………21

Certificate of Service…………………………………………………………...22

## Table of Authorities

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255 (1986)……………………………………………………..10

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020)………8

*Ismael v. Roundtree*,
161 F.4th 752, 2025 U.S. App. LEXIS 31896 at *15-17, 20-21 (11th Cir. 2025)……………………………………………5-6, 8-11, 14, 17-18, 20

*Jenkins v. Nell*,
26 F. 4th 1243, 1251 (11th Cir. 2022)……………………………………11

*Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*,
121 F.4th 855, 871 (11th Cir. 2024)……………………………………..15

*Lange v. Hou. Cty.*,
152 F.4th 1245, 1293-94 (11th Cir. 2025) (Abudu, J., dissenting)…………15

*Lewis v. City of Union City*,
918 F.3d 1213, 1226 (11th Cir. 2019)……………………………………10

*Long v. Ala. Dep't of Human Res.*,
650 F. App'x 957, 969-70 (11th Cir. 2016)………………………………..9

*McCreight v. AuburnBank*,
117 F.4th 1322, 1335 (11th Cir. 2024)…………………………………5-7, 9

*McDonnell Douglas Corp. v. Green (1973)*……………………………………..5

*Muldrow v. City of St. Louis*,
601 U.S. 346, 350, (2024)…………………………………………………...7

*Santana v. Telemundo Network Grp., Ltd. Liab. Co.*,
No. 22-13879, 2026 U.S. App. LEXIS 1522, at *30-31 (11th Cir. Jan. 22, 2026)…………………………………………………………………..17

*Staub v. Proctor Hosp.*,
62 U.S. 411, 419, 420 (2011)..........................................................8

*Tynes v. Florida Department of Juvenile Justice*,
88 F.4th at 947..........................................................................14

**Statutes & Other:**

42 U.S.C.S. § 2000e-2................................................................6, 9

Fourteenth Amendment to the United States Constitution.............................15

Federal Rule of Civil Procedure 56.....................................................6

Title VII of the Civil Rights Act of 1964.............................................8-9

## I. Introduction

Defendant concedes that this case is governed by the "circumstantial mosaic" summary judgment standard discussed in *McCreight v. AuburnBank* and *Ismael v. Roundtree*—not by the *McDonnell Douglas* framework. Nevertheless, Defendant's brief ignores *Ismael*, pays only lip service to *McCreight,* and instead hews closely to familiar *McDonnell Douglas* arguments. In the section of the brief addressing Plaintiff's gender discrimination claim, for instance, Defendant begins its argument for affirmance by discussing whether Plaintiff has established a prima facie case. (Doc. 14, Brief of Appellee at 28). Defendant spends the remainder of this first section arguing against Plaintiff's comparator evidence, supporting its argument largely with citations to cases applying *McDonnell Douglas*. (Doc. 14, Brief of Appellee at 28-34). Defendant then moves to arguing that Plaintiff has offered no "probative evidence of pretext with respect to the proffered reason for Fennel's termination," and urges that it is entitled to judgment as a matter of law because, in Defendant's view, "[t]he Board had legitimate, non-discriminatory reasons for recommending and approving termination of Fennel's … employment." (Doc. 14, Brief of Appellee at 34, 35-37, 40-42).

The essence of Defendant's argument is that the trial court was correct to grant summary judgment because, in Defendant's view and the court's, Plaintiff had not shown pretext. Defendant's argument thus invites the Court to focus narrowly "on

the defendant's purported rationale" while ignoring "other probative evidence of Appellees' illicit intent." *Ismael v. Roundtree*, 161 F.4th 752, 2025 U.S. App. LEXIS 31896 at * 20 (11th Cir. 2025). As to Plaintiff's associational race discrimination claim, Defendant repeatedly invites the Court to weigh the evidence, reject reasonable inferences in Plaintiff's favor, and adopt Defendant's preferred inferences, urging, for example, that "[t]he simultaneous termination of both participants for the same conduct defeats any inference that Fennel was targeted because of interracial association." (Doc. 14, Brief of Appellee at 40). But a reasonable jury could conclude the opposite. It bears repeating: "Requiring a plaintiff to negate the defendant's explanation on summary judgment has at least two defects. First, it is not required to succeed at trial. Second, it detracts from the plaintiff's affirmative case that the driving cause was illegal discrimination or retaliation." *Id* at *15 (11th Cir. 2025). "If we require the plaintiff to negate their counterparty's rationale, we permit the absurd result of a plaintiff losing on summary judgment for failing to demonstrate a falsity that she would never need to show at trial." *Id*. at *15-16.

This Court should reject Defendant's framing of the case and should instead recognize that under a "circumstantial mosaic" framework, or more simply, under the "[r]ule 56 summary judgment standard applied to employment discrimination," a reasonable jury could find that Plaintiff's sex was at least "a motivating factor for

[the termination of her employment], even though other factors" may have "also motivated [her termination]." 42 U.S.C.S. § 2000e-2; *see McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) ("the convincing mosaic approach is—in its entirety—the summary judgment standard.") The Court should reverse the trial court's judgment and remand this case for a jury trial on both of Plaintiff's claims.

## II. **A Reasonable Jury Could Find that Slater's Biased Actions Caused Plaintiff's Termination**.

Defendant argues that the Board is insulated from Slater's discriminatory animus because Slater did not escalate prior allegations of sexual harassment against Bell to the central office but "handled these reports at the school level" (Doc. 14, Brief of Appellee at 29), because the "prior allegations against Bell … were not previously reported by Principal Slater to the Superintendent or the Board" (Doc. 14, Brief of Appellee at 30) and because "the HR and the Board were unaware of prior allegations against Bell until after the March 8 investigation commenced." (Doc. 14, Brief of Appellee at 33). Similarly, Defendant points to the Board as the statutory decisionmaker and urges that "Fennel offers no evidence suggesting Slater was involved in the recommendation process leading to the termination of her probationary employment." (Doc. 14, Brief of Appellee at 36). The Court should reject these arguments because a reasonable jury could find that discriminatory animus remained both a "but for" and proximate cause of Plaintiff's termination.

As Plaintiff reasoned on page 58 of her principal brief:

> In sum, a reasonable jury could therefore find that Slater subjected Plaintiff and Bell to disparate terms and conditions of employment, constituting actionable discrimination under *Muldrow v. City of St. Louis*, 601 U.S. 346, 350, (2024) and, based on comparator evidence, that Plaintiff's gender was at least a motivating factor in his actions. A reasonable jury could further find that Slater's biased actions, including the falsified memo, remained both a "but for" and a proximate cause of Plaintiff's termination, as Slater's decision to report Plaintiff to the central office led directly to her firing. *See Staub v. Proctor Hosp*., 562 U.S. 411, 419, 420 (2011).

(Doc. 12, Brief of Appellant at 58). Similar to its treatment of *Ismael*, Defendant's brief simply ignores this argument, which demonstrates how a reasonable jury could hold the Board responsible for Plaintiff's termination as a result of Slater's gender-based disparate treatment of Plaintiff and Rahman Bell on the numerous prior instances in which Bell was given a "free pass" for inappropriate, sexually harassing behavior toward women and girls. Such an analysis is wholly consistent with the agency principles elucidated by the Supreme Court in *Staub v. Proctor Hosp*. and also with the "but for" causation framework for Title VII cases endorsed by the Supreme Court in *Bostock* and by the Eleventh Circuit in *Ismael*. As summarized in *Ismael*:

> … it is not required, under either § 1981 or Title VII, to show that the unlawful purpose was the only contributing factor. "[T]he traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *Bostock v. Clayton Cnty.*, Georgia, 590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020).
>
> A plaintiff can even succeed where there are multiple but-for causes: "so long as the plaintiff's [protected characteristic] was one but-for cause of

> [the adverse] decision, that is enough to trigger the law." *Id*. at 656, 140 S. Ct. at 1739 (emphasis added). In this situation, the employer's reason might be both factually grounded and directly causal—in other words, unassailable as pretext. If we require the plaintiff to negate their counterparty's rationale, we permit the absurd result of a plaintiff losing on summary judgment for failing to demonstrate a falsity that she would not need to show at trial.

*Ismael*, 2025 U.S. App. LEXIS 31896 at * 15-16.

In accordance with this Court's analysis in such cases, it is the jury's role, not the Court's, to sort out whether Slater's disparate treatment or the Board's vote should be given greater weight in the causation analysis. *See, e.g., Long v. Ala. Dep't of Human Res*., 650 F. App'x 957, 969-70 (11th Cir. 2016) (reasoning that "there is evidence suggesting that Plaintiff's termination was at least partially motivated by his protected deposition testimony … it is for the jury to decide whether, notwithstanding the … alleged misconduct, Plaintiff's testimony in Rawls was the 'but-for' cause of his termination.") Based on the record evidence, a reasonable jury might find that the Superintendent's recommendation and the Board's vote were one aspect of "but for" causation. The same jury might equally find, however, that Principal Slater's discriminatory, more favorable treatment of Bell over Fennel constituted another, more significant "but for" cause behind Plaintiff's termination. And importantly, Plaintiff does not need to meet the higher burden of "but for" causation on her Title VII discrimination claims. Rather, as Plaintiff has consistently argued, she may prevail by showing that her sex (and/or her race in context with her

association with Bell) "was at least 'a motivating factor for [the termination of her employment], even though other factors' may have "also motivated [her termination]." 42 U.S.C.S. § 2000e-2; *McCreight*, 117 F.4th at 1335.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). This Court should reverse the trial court's judgment and allow a jury to decide whether Slater's discriminatory treatment of Plaintiff and Bell or the Board's vote should be given greater weight in the causation analysis.

## III. Defendant Seeks to Minimize Evidence of Slater's More Favorable Treatment of Bell's Comparable Misconduct.

Defendant seeks to minimize the reports Slater received of Bell's misconduct while Bell was still a probationary employee, writing that "[t]wo years prior to the March 8th incident, Principal Slater had a few teachers tell him that Bell had made inappropriate comments to them and one teacher shared her observation of a casual interaction between Bell and a female student." (Doc. 14, Brief of Appellee at 29). However, reasonable jurors might reject Defendant's portrayal of these allegations as mere "inappropriate comments" and "casual interactions." Instead, reasonable jurors might find that these events are sufficiently similar to what Plaintiff was accused of—"something inappropriate" with a person of the opposite sex, giving rise to doubts about the administrator's leadership—to warrant meaningful comparison, such that Plaintiff and Bell were similarly situated "in all material

respects," satisfying the standard set forth in *Lewis v. City of Union City*, 918 F.3d 1213, 1226 (11th Cir. 2019).

And even if Bell is not a "strict comparator," evidence of his more favorable treatment is still relevant: Defendant ignores the guidance of *Ismael* and the cases on which *Ismael* relies in holding that "comparator evidence can still be useful even when there are 'material differences' between a plaintiff and her comparator." *Ismael*, 2025 U.S. App. LEXIS 31896 at *20; see also *Jenkins v. Nell*, 26 F. 4th 1243, 1251 (11th Cir. 2022) (reasoning that "[a]lthough Jones was not a strict comparator, the evidence that he threatened his supervisor, a Rule A-6 violation, and did not incur any additional warnings or discussion about his comments is relevant.")

As to Defendant's attempt to minimize the severity of Bell's sexually harassing conduct, it bears pointing out that Defendant labels a "casual interaction" between Bell and the student sounds an awful lot like sexual assault:

> […] a student was sent to him before first period for a dress code violation. She had holes in her jeans above the knee. He was standing at the end of the hall, and teachers were standing at their doors, waiting for the bell to ring. When the student approached him about the dress code violation, **he stuck his hand in the hole in her jeans which was above the thigh**. He was pointing out how egregious the hole was, but the touching made teachers uncomfortable.

(Doc. 56-7 (emphasis added); Doc. 56-3, 46:22-48:4). A teacher reported the matter to Slater, who reached out to the writer of the document. However, Slater did not report these allegations to Susan Goodin, the HR Director. (Doc. 56-3, 37:1-4).

Second, Bell's behavior with a young female teacher, as reported to Bell, was similar in all material respects to the behavior Plaintiff was accused of that led to her termination, with other teachers reporting, in essence, that "something inappropriate" was occurring between the teacher and Bell, and with their reports also reflecting that Bell had "compromised" himself as a leader. See Doc. 14, Brief of Appellee at 25 (emphasis added) ("As noted by the District Court, the record fully supports a reasonable, common-sense inference of belief by Laura Dennis, Superintendent Dennis, or the Board that **something inappropriate** had occurred within Bell's office between Fennel and Bell.") According to the reports Slater received, Bell and the young female teacher would engage in "public displays of 'affection'" in the halls such that "[w]hen the teacher would stand at the end of the hall with Mr. Bell, they would often touch—whether by touching hands, **touching each other's legs**, **hugging**, putting a head on the shoulder, etc. They were, what most would consider, **openly flirtatious**." (Doc. 56-7) (emphasis added). This conduct while Bell was a probationary employee in 2017 was reported to Slater, but Slater did not report Bell to the central office or otherwise take action to cause Bell to be disciplined, by contrast with his immediate reporting of Plaintiff. (Doc. 56-3, 37:1-4). Instead, he allowed Bell's conduct to continue, including alarming grooming behavior toward female students. (Doc. 56-8; Doc. 56-2, 112:17-113:4; Doc. 56-3, 37:1-4). Based on these reports, a reasonable jury could also find that

Slater surely must have considered that Bell had compromised himself as a leader—but he took no action.

Slater continued to shield Bell from discipline for continued misconduct, merely issuing him a 2020 counseling memo that reads like a sexual harassment bingo card: "making comments to teachers, touching teachers on the arm/shoulder, calling teachers to your office without good reason, doing multiple observations on particular teachers (8 on one teacher in a month), talking about texting outside of school, hanging out in teacher's room for long periods, Women/Girls visiting your office for no apparent reason for extended lengths of time", including the following inappropriate comments attributed to Bell: "you look good today, you should dress like that more often"; "you can text me, my wife does not check my phone"; "you need to invite me to your house"; "you can come talk to me any time or text me on the weekend"; "It is my business if I cheat on my wife"; "come here, come closer so Mrs. Crownover can talk about us." (Doc. 56-9; Doc. 56-2, 37:13-53:5).

Again, the trial court appears to have correctly accepted that a reasonable jury could find that Bell's past conduct in the workplace, both before and after he became a tenured employee, amounted to "intimate, inappropriate behavior" and that Bell repeatedly placed himself (and his victims, including teachers as well as students) in "compromised" positions: the Court acknowledged that "[t]he record does reveal that Slater gave Bell multiple warnings after Bell repeatedly placed himself in

compromised positions with other staff members and students" and that "Bell engaged in 'intimate, inappropriate behavior,' including making inappropriate comments to teachers, touching teachers on the arm and shoulder, and having women and girls visit his office for extended lengths of time without an apparent reason." (Doc. 59 at 12-13). Given these findings by the Court, "it is the jury's role—not [the Court's]—to determine how much weight comparator evidence should be given." *Ismael*, 2025 U.S. App. LEXIS 31896 at *21 (quoting *Tynes v. Florida Dept. of Juvenile Justice*, 88 F.4th at 947). A reasonable jury could find that Slater's more favorable treatment of Bell gives rise to an inference that Plaintiff's female gender was at least a motivating factor in Slater's decision to report her immediately to the central office the very first time she was accused of doing "something inappropriate" with Bell in his office.

## IV. **The Termination of "Both Participants" Is Consistent With and Supports Plaintiff's Theories of Associational Race and Gender Discrimination**.

Defendant urges at various points in its brief that Bell's termination is fatal to Plaintiff's case, arguing on page 26 that "Fennel and Bell were disciplined identically, subverting any inference of sex-based animus" and on page 40 that "[t]he simultaneous termination of both participants for the same conduct defeats any inference that Fennel was targeted because of interracial association." But a reasonable jury could disagree. In so arguing, Defendant seeks again to draw the focus away from Slater's animus and his more favorable treatment of Bell, hoping

to shift the focus to its justification for terminating her—but the Eleventh Circuit has warned that shifting the focus in this manner "can lead both litigants and the court down a rabbit hole that obfuscates the plaintiff's affirmative claim." *Ismael*, 2025 U.S. App. LEXIS 31896 at *16. Moreover, the validity of Defendant's preferred inference is highly questionable, especially when applied to Plaintiff's associational discrimination claim. As an analogy, anti-miscegenation laws—the most blatant historical examples of associational race discrimination—historically punished both participants in an interracial marriage. "For example, in *Loving v. Virginia*, the Court confronted the argument that anti-miscegenation laws were permissible because they 'punish[ed] equally' both the Black and white participants in an interracial marriage. But the Court "reject[ed] the notion that the mere 'equal application' of a statute containing racial classifications is enough to remove the classifications from the Fourteenth Amendment's proscription of all invidious racial discriminations." *Lange v. Hou. Cty.,* 152 F.4th 1245, 1293-94 (11th Cir. 2025) (Abudu, J., dissenting).

The historical analogy to anti-miscegenation laws punishing both participants in an interracial marriage suggests that contrary to Defendant's arguments, the "simultaneous termination of both participants" is precisely what one would expect if an employer were motivated to terminate individuals because of their association with a person of the opposite race; in such a situation, each of the participants in the association has been terminated because of his or her race in the context of the

interracial association. *See Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 871 (11th Cir. 2024) ("[i]n other words, claims based on interracial association necessarily implicate the race of both the complainant and the associate. So, any discrimination based on that association is based on the race (or sex or religion or national origin) of both parties.") The fact that both Plaintiff and Bell were fired is therefore consistent with Plaintiff's theory of associational race discrimination, not a fatal fact as Defendant and the district court would have it.

Here, where Plaintiff has proposed theories of both gender and associational race discrimination, Slater's knowledge that Bell would claim race discrimination if finally subjected to discipline allows jurors to infer that Slater had incentive to depict a white female as equally culpable to counter the inevitable accusation of racism, meaning that the termination of both participants is also consistent with Plaintiff's theory of gender discrimination. (Plaintiff has evidence that Slater acted on that incentive by fabricating a memo to make Plaintiff appear more culpable than she was, with the result that both Plaintiff and Bell were terminated, as explained in the following section of this reply; this is not mere "speculation," as Defendant urges). These inferences, along with the Slater's past more favorable treatment of Bell, allow a reasonable jury to find that Plaintiff's sex was a motivating factor in Slater's decision to immediately escalate to the central office. The School Board's focus on the simple fact of Bell being behind closed doors with a female administrator, with

one member asking Slater, "Can you explain when it would be appropriate for two administrators to be together behind closed doors, a male and a female?" further shows the reasonableness of the inference that Plaintiff's sex was at least a motivating factor in her termination. (Doc. 56-4, 68:4-17). "As assessing credibility, weighing the evidence, and drawing reasonable inferences are responsibilities for the jury rather than the court, the evidence presented by the nonmoving party must be accepted as true, and all reasonable inferences must be drawn in their favor." *Santana v. Telemundo Network Grp., Ltd. Liab. Co.*, No. 22-13879, 2026 U.S. App. LEXIS 1522, at *30-31 (11th Cir. Jan. 22, 2026). Because the trial court denied Plaintiff the benefit of such inferences, the trial court's judgment should be reversed.

## V. <u>Defendant Advances No Non-Discriminatory Explanation for Why Slater Would Fabricate A Memo to Make Plaintiff Appear More Culpable Than She Was</u>.

In what would traditionally be labeled the "pretext" section of its brief, Defendant persists in its attempts to lead the Court "down a rabbit hole that obfuscates the plaintiff's affirmative claim." *Ismael*, 2025 U.S. App. LEXIS 31896 at *16. Defendant also continues to ignore *Ismael*, which cautions that evidence of pretext is just "*a subset* of potentially relevant circumstantial evidence"; and that "evidence does not need to attack—or even have anything to do with—the defendant's purported rationale to help raise an inference of discrimination." *Ismael*, 161 F.4th 752, 2025 U.S. App. LEXIS 31896 at *17, 21 (11th Cir. 2025).

Defendant and the trial court are both wrong to label arguments about Slater's motive in fabricating the memo as "purely speculative" or irrelevant for, in the trial court's words, "failing to dispute the *substance* of the reason cited by the Board for her termination…" (Doc. 59 at 15). But again, "evidence does not need to attack—or even have anything to do with—the defendant's purported rationale to help raise an inference of discrimination." *Ismael*, 161 F.4th 752, 2025 U.S. App. LEXIS 31896 at *17, 21 (11th Cir. 2025). Contrary to the reasoning advanced by the trial court and seconded by Defendant, Plaintiff has produced evidence that Slater took drastic steps to make Plaintiff appear more culpable in her association with Bell than she actually was. Defendant admits that Principal Slater's memorandum, Doc. 49-14, documenting an alleged prior warning to Plaintiff in September 2021 about "hanging out behind closed doors for long periods of time" with Bell and directing her to "[l]imit the number of interactions that you are having behind closed doors" and to "[l]imit your number of interactions (within reason) to complete your job responsibilities," was a compilation of alleged "notes" that do not presently exist, and which Plaintiff had never seen, post-dated by Slater to create the false appearance that Plaintiff had been warned in 2021, and that the falsified document did not exist prior to March 2022. (Doc. 56-10; Doc. 49-14; Doc. 56-3, 22:13-24:2; 223:2-18; Doc. 56-2, 63:4-64:18; Doc. 56-1, 48:5-15, 89:21-90:9, 110:14-111:2). Contrary to the memo Slater fabricated in 2022 after Goodin asked for

documentation that he had spoken to Plaintiff and Bell, Plaintiff testified that Slater never warned her about limiting her time behind closed doors with Bell; rather, Slater only spoke to Bell about limiting his time alone with Plaintiff, allowing a reasonable jury to infer that Slater believed Bell, not Plaintiff, was at fault in this situation. (Doc. 56-22; Doc. 56-1, 112:22-113:7; Doc. 56-4, 69:4-13; 229:8-231:19).

Testimony about Bell crying racism on previous occasions when teachers reported his sexually harassing behavior is also evidence giving rise to inferences about Slater's motives in fabricating the memo. Each time when Bell raised allegations of race discrimination, Slater promptly backed down. After Bell blamed the 2020 sexual harassment allegations on racism, Slater did not discipline him, but merely told Bell, "[w]e're just going to move on," allowing a reasonable jury to infer that Slater did not discipline Bell because he was concerned about being accused of racism, i.e. because of Bell's African American race. (Doc. 56-2, 36:1-37:12; Doc. 56-4, 226:11-16). A reasonable inference connects this testimony with Slater's actions: that he created this memo to make Plaintiff appear more culpable in the situation because he knew Bell would again accuse Slater of racism when he reported the matter. Making Plaintiff appear more culpable would allow him to be seen to be treating a white female just as severely as he treated Bell when reporting the matter to the central office. A reasonable jury could further infer from the numerous reports

Slater had received about Bell's sexually harassing conduct over the years that he knew Bell was out of control and that the time had finally come to report him.

The proposition that Slater acted on a discriminatory motive in falsifying the memo is therefore not "speculative," as Defendant and the trial court would have it. It is a reasonable inference connecting otherwise inexplicable actions, rooted in the evidence of deposition testimony, which reasonably explains Slater's mendacious conduct in falsifying the memo—conduct which would otherwise be inexplicable. Notably, Defendant offers no alternate, non-discriminatory explanation for why Slater would falsify this document. In the absence of such an explanation, surely Plaintiff should be given the benefit of the reasonable inference that he had an illicit motive in doing so. The jury may reject such inferences, or accept them, but that should be a decision for the jury to make. The trial court erred in rejecting inferences regarding Slater's motive under the erroneous belief that they were not relevant because they did not "attack—or even have anything to do with—the defendant's purported rationale." *Ismael*, 2025 U.S. App. LEXIS 31896 at *21 (11th Cir. 2025).

## VI. <u>Conclusion</u>

Based on the arguments and authorities discussed in this reply and in Plaintiff's opening brief, the Court should reverse the trial court's judgment and remand this case for a jury trial on all claims.

Respectfully submitted,

*/s/ L. William Smith*

Jon C. Goldfarb
L. William Smith
Counsel for Plaintiff-Appellant

## Certificate Of Compliance

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. (32)(a)(7)(B). This brief, exclusive of items required by 11th Cir. Rule 40-3(a), (b), (c), and (i), contains 4079 words according to the word-count function of the word-processing system used to prepare the brief.

Pursuant to 11th Cir. Rule 28.1 (d), the following is the type size and style used in this brief: Times New Roman 14 pt.

/s/ L. William Smith
OF COUNSEL

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing document was served via the Eleventh Circuit's electronic filing system to all counsel of record on the 11th day of February, 2026.

/s/ L. William Smith
OF COUNSEL